**Richard WARE, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Feb. 9, 1978.

Certiorari Denied by Supreme Court
· May 22, 1978.

Edward G. Thompson, Public Defender, Walker Gwinn, Appellate Counsel Public Defender's Office, Memphis, for appellant.

Brooks McLemore, Jr., Atty. Gen., Robert L. Tucker, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., Dan L. Newsom, Asst. Dist. Atty. Gen., Memphis, for appellee.

OPINION

DUNCAN, Judge.

The defendant, Richard Ware, convicted of grand larceny and sentenced to the penitentiary for not less than nor more than three years, brings this appeal contesting the legal sufficiency of the convicting evidence, and complaining that his alleged post-arrest silence was used against him. We find no merit to these complaints.

According to the evidence, on August 4, 1976, at approximately 10:45 p. m., Sammy B. Anderson parked his automobile in front of his house. At about 11:50 p. m., he looked out and discovered his vehicle missing. Shortly after 2:30 a. m. on the following morning, two police officers were investigating an armed person call. It was later determined that this call had come from the residence of the defendant's wife. As the officers approached Mrs. Ware's residence, they observed a vehicle, later determined to be the Anderson automobile. After talking to Mrs. Ware, the officers spotted this same vehicle again nearby, observed it swerving and almost hitting some other cars. The officers saw the vehicle pull into a nearby apartment house driveway. Whereupon, the officers blocked the vehicle and found it occupied by the defendant. The automobile had been hot-wired and the motor was still running. The officers, unaware at that time that the vehicle had been stolen, arrested the defendant for driving while intoxicated and advised him of his rights. Upon inquiry by the officers, the defendant stated that a friend had brought the vehicle to him to tune it up.

The defendant testified and sought to convince the jury that he was only a passenger in this vehicle, and that another person, whom he described as a friend but knew only by the nickname of "Tighthead" was the driver, and that this friend had departed from the vehicle after it had stopped. The defendant's testimony was riddled with inconsistencies as to the time when he allegedly got with his friend in the stolen vehicle. He initially testified that it was between 7:00 p. m. and 8:00 p. m., later changed the time to around 9:00 p. m., again extending the time to 10:00 p. m., and finally stated that it could have been around 11:00 p. m. He offered his wife and children who testified that when the defendant was in the vehicle at their house, another individual was driving.

The jury discounted the defendant's theory that some other person was responsible for the theft of the Anderson vehicle and accredited the State's version of this affair.

We are of the opinion that the State's proof clearly shows that the defendant was in possession of this stolen vehicle within three to four hours from the time that the theft occurred. Under the facts here, the jury was more than entitled to reject the explanation offered for the defendant's possession of this stolen vehicle. Without even considering the other direct and circumstantial evidence implicating the defendant in this crime, the defendant's possession of this recently stolen vehicle, in conjunction with no adequate explanation for such possession, is sufficient to support the verdict of the jury. *Bush v. State,* 541 S.W.2d 391 (Tenn.1976). The evidence does not preponderate against the verdict of the jury. *Anderson v. State,* 207 Tenn. 486, 341 S.W.2d 385 (1960).

Next, the defendant alleges that the court should have granted a mistrial because the State elicited testimony in chief that the defendant exercised his constitutional right to remain silent in face of accusation, and further that the State was allowed to impeach the defendant on cross-examination about the same thing.

In the State's proof in chief, Officer Sidney M. Johnson testified that:

"Well, after we stopped the defendant and we did find out that he was intoxicated, we arrested him for DWI, and advised him of his rights, at which time after I noticed that the car didn't have a key in it, and the wires was down, I asked him whose car was it, and at which time, he stated to me that a friend had brought him the car for him to tune the car up, and we asked him what was his friend's name, or the individual's name, and he didn't state it—didn't say anything."

This testimony was admitted without any objection on the defendant's part. The defendant did not contend at the trial nor does he in this appeal that he had not received his proper *Miranda* warnings or that he had not effectively waived them. He makes no complaint about this area of the testimony. Rather, he bases his complaints on two other items of testimony that occurred at the trial.

First, on direct examination of Sergeant L. A. Porter, the State elicited the following testimony from this officer:

"Q. . . . And did you have any occasion to talk with the defendant with regard to this case?

A. Yes, sir; but he wouldn't give me a statement. He said—(interrupted)"

Second, on cross-examination of the defendant, the State elicited the following testimony:

"Q. Where was your friend at the time the police cars arrived?

A. Well, when we arrived at the apartments he got out, and left the car sitting there facing the drive, you know, about thirty or forty foot off of Mimosa. I guess he run around them apartments. I don't know what happened to him.

Q. All right, sir. Did you tell the police officers what happened?

A. Well, they wouldn't seemed to be listening to me.

Q. You didn't tell them that there was a man that just ran from the car and ran into the apartments that was in the car that was actually driving the car?

A. I don't remember what I told them. I know—I know he drawed that pump gun on me and scared me. I don't know what I said.

Q. So you don't remember it, but you—(interrupted)

A. I don't know. I was scared. He had that pump gun on me. I probably told them, I don't remember. I was scared, real scared.

Q. Later on after you weren't scared, did you ever tell the police?

A. I think I did."

Initially, we note that the court sustained the defendant's objections to both lines of questioning set forth and gave a curative instruction regarding the first instance.

■ We recognize that a defendant has a constitutional right to remain silent in the face of accusations against him, not only during his trial but also upon arrest and while in custody, and the prosecution may not, therefore, use at trial the fact that a defendant claimed his privilege in the face of accusation. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Braden v. State,* 534 S.W.2d 657 (Tenn.1976). Also, a defendant's post-arrest silence cannot be used to impeach his testimony at trial. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

■ We have no quarrel with the foregoing legal principles, but we find that they cannot be used to sustain the defendant's position because a fair and complete reading of this record shows that the defendant did not elect to remain silent in the face of accusation. At the time of, and at the scene of, the defendant's arrest, he gave the police an exculpatory statement, and at the trial, he expanded on this statement in his direct testimony.

Once the defendant gave his initial statement at the scene of his arrest, it was not improper for officer Johnson to testify that he "didn't say anything" else, or for Sergeant Porter to testify that shortly thereafter at the police station, "he wouldn't give me a statement." *See Hembree v. State,* 546 S.W.2d 235 (Tenn.Cr.App.1976).

■ Regarding the second item of testimony of which complaint is made, we do not see any error by reason of the attorney general's brief cross-examination of the defendant regarding whether he had told the police about the alleged implication of the other man. The defendant had elaborated rather extensively in his direct testimony on this subject in an effort to exculpate himself from this crime. Further, the defendant testified that he thought that he had told the police of the other man's alleged implication. Where a defendant testifies to an exculpatory version of events and claims to have told the police the same version of events upon arrest, then his post-arrest silence can be used to contradict him. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior fol-

lowing arrest. *Doyle v. Ohio, supra,* 96 S.Ct. at 2245, n. 11.

We find no merit to the defendant's assignments of error and they are overruled.

Affirmed.

WALKER and O'BRIEN, JJ., concur.