IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

FEBRUARY 1996 SESSION



FILED

July 26, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 02-C-01-9504-CR-00104 |
| APPELLEE, | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Wil V. Doran, Designated Judge |
| EVERETT D. CAIN, | ) | |
| | ) | (First Degree Murder) |
| APPELLANT. | ) | |

FOR THE APPELLANT:

W. Mark Ward
Assistant Public Defender
147 Jefferson Avenue
Suite 900
Memphis, TN 38103
(On Appeal)

Robert T. Hall
Assistant Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, TN  38103-1947
(At Trial)

OF COUNSEL:
A C Wharton, Jr.
Shelby County Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, TN  38103-1947

FOR THE APPELLEE:

Charles W. Burson
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN   37243-0497

John P. Cauley
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN   37243-0493

John W. Pierotti
District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN   38103-1947

Paul F. Goodman
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN  38103-1947

OPINION FILED: _____

AFFIRMED

JOE B. JONES, Presiding Judge

The appellant, Everett D. Cain, was convicted of murder in the first degree by a jury of his peers. He was sentenced to life imprisonment in the Department of Correction. Two issues are presented for this Court's review. The appellant contends that the evidence is insufficient, as a matter of law, to support a finding by a rational trier of fact that he was guilty of murder in the first degree beyond a reasonable doubt. He argues that the state failed to prove the elements of premeditation and deliberation. The appellant also contends that the trial court committed error of prejudicial dimensions by failing to grant his motion for mistrial after the assistant district attorney general commented upon the appellant's failure to give the police a statement following the <u>Miranda</u> warnings during the state's opening statement. After a thorough review of the record, the briefs of the respective parties, and the authorities which govern the issues, it is the opinion of this Court that the judgment of the trial court should be affirmed.

The appellant is confined to a wheelchair. On July 19, 1992, the appellant was playing a dice game on the steps of Kenny Fason's apartment. Several people were watching the game. Virginia Reece, Fason's mother, observed the game from her second-story apartment. When she heard four gunshots, she looked out of her window. She noticed the appellant placing a silver object, which appeared to be a gun, under his leg. The people observing the dice game dispersed when the shots were fired. The appellant rolled himself away in his wheelchair.

The appellant went to the apartment of Christine Threat, which was near the situs of the shooting. Threat had gone to a neighbor's apartment to use the telephone. When she returned to her apartment, she found the appellant sitting in her living room. Threat testified that she did not know the appellant very well, she did not invite him into her apartment, and she was surprised to find the appellant in the apartment when she returned. The appellant told Threat that "he shot once in the air and he was waiting for the motherfucker [Fason] to break and run. And when [Fason] broke and ran, he [the appellant] shot three more times. And he was going to shoot until he see [sic] the motherfucker [Fason] fall." The appellant stated that he shot Fason because he had given

1

Fason a sum of money to keep for him, and Fason had spent the money. The police arrested the appellant at Threat's apartment several hours after the murder. The police were unable to recover the murder weapon.

The appellant shot Fason in the head. The projectile penetrated Fason's brain, which caused Fason to sustain a severe brain injury. Fason died as a direct and proximate result of the brain injury approximately two months after the incident in question.

I.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding of the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied (Tenn. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this Court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Tuggle, 639 S.W.2d at 914.

In this case, the evidence is sufficient to support a finding by a rational trier of fact that the appellant was guilty of first degree premeditated murder beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The victim's mother, Virginia Reece, testified that a few days before the murder, she was sitting on her porch when the appellant came by and stated that he was going to kill her son. When she asked why, he just smiled and rolled away. The appellant killed the victim in retaliation for the victim's failure to return the money. Finally, the appellant's own admission of shooting once into the air and then waiting for the victim to try to run before firing the fatal shot indicates a premeditated and deliberate killing done with reflection and a cool purpose. State v. Brown, 836 S.W.2d 530, 543 (Tenn. 1992).

This issue is without merit.

## II.

During his opening statement, the Assistant District Attorney General made the following remarks:

> Sergeant Ross, with the Memphis Police Department, will testify that he . . . talked to Mr. Cain about what happened and asked him what had happened. And Mr. Cain admitted that he was there when Kenneth Fason got shot. . . . And Sergeant Ross asked the question of Everett Cain, 'Did you shoot Kenneth Fason?" At which time Everett Cain declined to say any more, but he admitted to Sergeant Ross that he was present at the time that Kenneth Fason was shot.

The appellant made no objection and the case went to trial. Sergeant D.E. Ross was the

third witness for the state. He interviewed the appellant after arrest. He testified that he gave the appellant the Miranda warnings. The appellant was asked if he understood his rights and if he wanted to give a statement. The appellant answered "yes" to both questions. The following questions were written down by Sergeant Ross and the appellant wrote out his answers.

Q: On July the 19th, '92, at approximately 3:55 p.m., did you shoot Kenny Fason at 255 Scott Street in Memphis, Shelby, Tennessee?

A: No.

Q: Did you see who shot Kenny Fason?

A: No.

*Q: Were you present when the shots were fired and Kenny Fason was struck by gunfire?

A: Yes.

Q: How many shots were fired?

A: I don't know.

*Q: What happened before the shooting occurred?

A: A dice game was going on.

Q: Do you know Kenny Fason?

A: Yes, for a couple of months.

Q: Did you give Kenny Fason $800 to hold for you when you went to the hospital for a broken finger?

A: No.

Q: Did Kenny Fason owe you any money?

A: No.

Q: Do you know Christine Threat?

A: Yes, she's a friend I've known for three months.

Q: Why did you go to her house after the shooting?

A: About ten minutes after the shooting I went to her house to get out of the way.

Q: Did you tell her that you shot him?

4

At this point, the appellant said he did not want to say anything else. No more questions were asked and the interview ceased.

At trial, the appellant was only asked about the two statements marked above with an asterisk. The final question of Sergeant Ross at trial was: "In your presence did Mr. Cain ever contest his own presence when Mr. Fason was shot?" Sergeant Ross answered "No." The appellant did not cross examine the witness.

The next day the appellant moved the trial court to declare a mistrial based upon the prosecutor's opening statement. He argued that the statement was "a direct improper and impermissible reference to this invocation of the Fifth Amendment by the defendant, and it cannot be properly published to the jury."

This issue has been waived. The failure to make a contemporaneous objection when the assistant district attorney general made the comment during his opening statement constituted a waiver of this issue. Tenn. R. App. P. 36(a); State v. McPherson, 882 S.W.2d 365, 373 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Gregory, 862 S.W.2d 574, 578 (Tenn. Crim. App. 1993); State v. Thomas, 818 S.W.2d 350, 364 (Tenn. Crim. App.), per. app. denied (Tenn. 1991). Nevertheless, this Court will consider the issue.

It is well established that a prosecutor's comment on the accused's exercise of his privilege against self-incrimination violates the Federal and State Constitutions. State v. Hale, 672 S.W.2d 201, 202 (Tenn. 1984); Thomas, 818 S.W.2d at 364. It is fundamentally unfair to use the accused's silence against him after he has been implicitly warned that exercising his right to silence cannot be used against him. Greer v. Miller, 483 U.S. 756, 762-63, 107 S.Ct. 3102, 3106-07, 97 L.Ed.2d 618, 628-29 (1987).

However, when the accused does give a voluntary statement after being informed of his constitutional rights, it is not error to comment on the scope of this voluntary statement in that the questioning was terminated at some point by the accused. State v. Kelly, 683 S.W.2d 1, 5-6 (Tenn. Crim. App.), per. app. denied (Tenn. 1984); Ware v. State, 565 S.W.2d 906, 908 (Tenn. Crim. App.), cert. denied (Tenn. 1978); Parks v. State, 543 S.W.2d 855, 857 (Tenn. Crim. App.), cert. denied (Tenn. 1976). This is what transpired in the case at bar. The state did not use the appellant's post-Miranda silence for

5

impeachment by arguing that he had the opportunity to explain his innocence but failed to do so. See Greer, 483 U.S. at 763-64, 107 S.Ct. 3108, 97 L.Ed.2d at 628-29; Dole v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 98-99 (1976). In Ware, this Court stated: "Once the defendant gave his initial statement at the scene of his arrest, it was not improper for officer Johnson to testify that he 'didn't say anything' else, or for Sergeant Porter to testify that shortly thereafter at the police station, 'he wouldn't give me a statement.'" 565 S.W.2d at 908.

Even if the statement were error, the error would be harmless beyond a reasonable doubt. Evidence of the appellant's guilt is overwhelming. Ms. Reece testified that the appellant had threatened to kill the victim before the murder. Ms. Threat testified that the appellant bragged about committing the murder shortly after the killing. Also, the jury was instructed on several occasions not to consider statements of counsel as evidence. In ruling on the appellant's motion made a day after the alleged error, the trial judge stated:

> The Court in its general instructions and during the trial, even at the adjournment yesterday, cautioned the jury that they should accept evidence only that comes from this witness stand. It cautions the jury that statements of counsel as to proof are not evidence and they should not take them as evidence. . . . That's been emphasized to the jury already. It will be restated in the Court's final instructions to the jury.

This Court finds that the state did not improperly comment on the appellant's right to remain silent. Furthermore, even if it were error, it would be harmless beyond a reasonable doubt. Any improper inference in the state's opening statement that the accused was admitting guilt by exercising his right to remain silent would have little, if any, effect considering the appellant made other admissible statements strongly indicating his guilt. The trial court did not abuse its discretion in denying the appellant's untimely motion for a mistrial based on the single statement made in the prosecution's opening statement.

_____
JOE B. JONES, PRESIDING JUDGE

6

CONCUR:


_____
GARY R. WADE, JUDGE


_____
JERRY L. SMITH, JUDGE