# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### FEBRUARY SESSION, 1995

FILED

April 30, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9410-CC-00212 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | FAYETTE COUNTY |
| VS. | ) | |
| | ) | HON. JON KERRY BLACKWOOD |
| BRIAN KEITH MARTIN, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Aggravated Burglary) |


## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF FAYETTE COUNTY


FOR THE APPELLANT:

RICHARD G. ROSSER
102 East Court Square
Somerville, TN 38068

FOR THE APPELLEE:

CHARLES W. BURSON
Attorney General and Reporter

CLINTON J. MORGAN
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

ELIZABETH RICE
District Attorney General

CHRISTOPHER MASHBURN
Assistant District Attorney General
302 Market Street
Somerville, TN 38068


OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Brian Keith Martin, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He was convicted by a Fayette County jury of aggravated burglary.[1] The trial court sentenced him as a Range II multiple offender to eight years in the Department of Correction. In this appeal, the Defendant presents five issues for review:

> (1) That the evidence supporting his conviction is legally insufficient;
> (2) that the trial court erred by failing to conduct a jury-out hearing regarding the admissibility of police testimony about potential criminal charges other than the one for which he was on trial;
> (3) that the State improperly questioned a witness about the Defendant's prior convictions or bad acts;
> (4) that the trial court erred in allowing the State to present testimony that he refused to make a statement to police; and,
> (5) that the trial court erred in sentencing him to eight years as a Range II multiple offender.

After carefully reviewing the record, we conclude the Defendant's issues lack merit and affirm the judgment of the trial court.

We begin with a brief summary of the relevant facts. On November 3, 1993, the home of Smith and Eva Bowling, located on Highway 59 in Fayette County, was burglarized. Smith Bowling returned to his home in the middle of the day to find that the back door had been pried open. As he was looking through his home to determine if anything was missing, he received a telephone call from an employee of the First Tennessee Bank in Bartlett, Tennessee regarding a check presented for payment at their drive-thru window. Bartlett is located in Shelby County, just west of Fayette County. Bowling informed the bank teller that his home had recently been burglarized and his checkbook was missing. The

---

[1] Tenn. Code Ann. § 39-14-403(a).

bank teller called the police, who arrived minutes later and arrested two individuals in the car at the drive-thru window, the Defendant and his girlfriend, Tina Carter. A search of the car revealed many items from the Bowlings' home, including a shotgun, a leather jacket, a bottle of prescription medication, a jar of change, and several pieces of jewelry. Police officers also discovered a loaded 9mm Smith & Wesson handgun which was not alleged to have been taken from the Bowlings' residence.

Tina Carter confessed to breaking into and taking items from the Bowlings' home. At the Defendant's trial, she testified that the Defendant slept while she committed the offense. According to her testimony, the couple was traveling from Pennsylvania toward Memphis. The Defendant drove for seven or eight hours, and then Carter began driving to allow him to sleep. Carter became lost and stopped at the Bowlings' home to ask for directions. She parked on the street, exited the car, and approached the house, all while the Defendant remained sleeping in the passenger seat. Finding no one home, Carter returned to the car, retrieved a pry bar, and broke into the house through the back door. She took a number of items and returned to the car, piling the stolen items on the back seat. The Defendant woke up as she drove away. Upon discovering the stolen items, he chastised her and asked her to return them. She refused to do so, fearing that she might be caught. They eventually made their way to the First Tennessee Bank in Bartlett. Asserting her right against self-incrimination, Carter declined to answer most questions concerning what had occurred at the bank.

Kelly Dunn, the teller at the drive-thru window of the First Tennessee Bank in Bartlett, testified that she observed Carter and the Defendant at the window

early on the afternoon of November 3, 1993. Carter was driving and the Defendant was awake in the passenger seat. Carter presented a check made payable to her from the account of Smith Bowling. She had endorsed the check and included her driver's license number. Dunn called Smith Bowling, learned that his checkbook was missing, and called the police. The Defendant never spoke to Dunn during the entire episode.

In his first issue on appeal, the Defendant argues that the evidence supporting his conviction is legally insufficient. He contends that there is no direct evidence linking him to the burglary of the Bowlings' home. He asserts that, in fact, the uncontradicted testimony of Tina Carter established that he neither participated in nor was aware of the burglary. Citing Cleveland Wrecking Co. v. Butler, 57 Tenn. App. 570, 421 S.W.2d 380 (1967), the Defendant contends that where testimony is not contradicted by direct proof or circumstances inconsistent with its truth, it must be taken as true. The Defendant does admit that possession of recently stolen goods gives rise to an inference that the possessor has stolen the goods. However, quoting from Bush v. State, 541 S.W.2d 391, 395 (Tenn. 1976), he argues that the inference is a "fiction of the law" and an "assumption of convenience" that disappears when "refuted by positive testimony." Thus, the inference arising from his possession of the Bowlings' recently stolen items disappeared in light of Carter's uncontradicted testimony that he was not involved in the burglary, thereby leaving absolutely no evidence to support his conviction.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable

-4-

to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

The evidence established that the Bowlings' residence had been burglarized and that several items had been stolen. The proof further established that the Defendant was at the scene at the time of the crime. He was traveling with his girlfriend, Tina Carter, who admitted to committing the crimes. Within a few hours after the burglary, the Defendant was arrested as he sat in the car with his girlfriend at a bank's drive-thru window after she had attempted to pass a

forged check taken from the burglarized residence. Numerous other items taken during the burglary were found in the vehicle with the Defendant and Carter.

Carter was called as a witness for the Defendant. She testified that the Defendant stayed in the car and slept while she burglarized the house. She said that he knew nothing about her breaking into the house and stealing the various items until he woke up after she drove away from the residence. While it is accurate to say that her testimony that the Defendant was asleep and thus unaware of the burglary was uncontroverted, certainly the jury was not required to give her testimony <u>any</u> credibility, and obviously the jury chose not to do so.

It is well established in Tennessee that the possession of recently stolen property gives rise to an inference that the possessor has stolen it and may, in light of surrounding circumstances, support a conviction for burglary. <u>See, e.g.</u>, <u>State v. Hamilton</u>, 628 S.W.2d 742, 746 (Tenn. Crim. App. 1981) (citations omitted); <u>see also</u>, <u>State v. Land</u>, 681 S.W.2d 589, 591 (Tenn. Crim. App. 1984) (citation omitted). The Defendant cites <u>Bush v. State</u>, 541 S.W.2d 391, 395 (Tenn. 1976), for the proposition that the inference arising from proof of possession of recently stolen property is a "fiction of the law" and an "assumption for convenience" which disappears upon the introduction of contrary proof. The Defendant, however, is quoting from a section of <u>Bush</u> in which the court was attempting to clarify the often confused terms "presumption" and "inference," as used in cases involving possession of recently stolen property. Immediately after this explanation, the <u>Bush</u> court clearly and succinctly stated that "the <u>inference</u> arising from the proven fact of possession of recently stolen property is not destroyed by contradictory evidence, even the positive testimony of witnesses...."

Bush, 541 S.W.2d at 395 (emphasis added). The court went on to hold that the force of the inference does not vanish upon the offering of an explanation by the defendant. Rather, the inference "remains to be weighed by the jury against the evidence offered by defendant in explanation of his possession of the recently stolen property." Id.; see also Land, 681 S.W.2d at 591.

Applying that sound reasoning to the case at bar, we believe it was the jury's province to weigh the evidence presented by the State, including the inference arising from the Defendant's possession of recently stolen property, against the explanation offered by the Defendant. The jury did so in this case, by rejecting the explanation of the Defendant's actions and finding him guilty. From a review of the record, we conclude that the evidence presented, along with the inference which may properly be drawn from the possession of the Bowlings' recently stolen property, is sufficient to support the Defendant's conviction of aggravated burglary beyond a reasonable doubt. The Defendant's first issue is therefore without merit.

In his second issue, the Defendant argues that the trial court erred by failing to conduct a jury-out hearing regarding the admissibility of police testimony about potential criminal charges other than the one for which he was on trial. In particular, the Defendant complains about the testimony of two officers, Howard Doyle and David Appleberry, concerning the reason each came to the bank and one specific item, a 9mm handgun, found during the search of the Defendant's car.

The Defendant filed a host of pretrial motions. Among them was a motion in limine requesting that the trial court order the State's witnesses not to testify concerning evidence of other potential criminal charges, with specific reference to forgery and possession of a firearm by a felon.[2] The trial court took this motion under advisement and reserved ruling on its merits until faced with a specific instance of such testimony at trial. At the same time, however, the trial court's order indicated that no State's witness should testify concerning "any prior bad acts of the Defendant" until the admissibility of such testimony was determined at a jury-out hearing.

Officer Doyle testified prior to Officer Appleberry. Before Doyle testified, the Defendant's trial counsel asked to approach the bench. At that bench conference, the Defendant's counsel voiced his concern that the police officer would testify "regarding a forgery, or possession of firearms, especially by a felon." Counsel contended that such statements were irrelevant for purposes of the charged offense and would be unduly prejudicial. The assistant district attorney responded that he would not ask if the Defendant "was charged with that offense," but intended to ask Officer Doyle what items were discovered in the car. The trial court instructed the prosecutor not to elicit testimony regarding the Defendant's prior criminal record or status as a felon. The Defendant's counsel voiced no further concerns, and the bench conference was concluded.

---

[2] The Defendant was initially represented by an assistant public defender. The assistant public defender filed a number of pretrial motions, including a typical motion in limine requesting a hearing pursuant to State v. Morgan, 541 S.W.2d 385 (Tenn. 1976), before testimony by the State's witnesses about any prior convictions or bad acts of the Defendant. The Defendant's present counsel was eventually substituted for the assistant public defender and filed additional pretrial motions, including a motion in limine seeking to restrict the potential testimony of police officers regarding forgery or possession of a firearm by a felon.

After the bench conference, the assistant district attorney questioned Officer Doyle as follows:

> Q. Were you called to the First Tennessee Bank Branch at the corner of Highway 64 and 70 in Bartlett?
> A. Yes, sir.
> Q. Okay. Could you tell the jury the nature of the call, and what you did in response?
> A. The call came out from dispatch as a forgery, with the subject still on the scene in the drive-out lane.

At this point, the Defendant moved for a mistrial based on unfair prejudice arising from the mention of "forgery." The trial court denied the motion but instructed the jury to disregard Officer Doyle's testimony concerning the reason he came to the bank. Later in his testimony, Officer Doyle described the items found in the car after the arrest of the Defendant and Tina Carter. Doyle testified that a loaded 9mm Smith & Wesson handgun was discovered during the search of the car. The handgun was not alleged to have been taken from the Bowlings' residence.

The Defendant made no contemporaneous objection to Officer Doyle's testimony about the handgun. After cross-examining Doyle, the Defendant's counsel again approached the bench. At this point, he objected to Doyle's testimony about the 9mm handgun, contending that it was irrelevant for purposes of the Defendant's aggravated burglary trial. The trial court overruled the objection.

Officer David Appleberry testified immediately after Officer Doyle. The assistant district attorney questioned Appleberry as follows:

> Q. Did you receive a call to come to First Tennessee Bank at the corner of Highway 64 and 70, on November 3rd, 1993?
> A. Yes, I did.
> Q. And how did you receive the call?

> A. I received the call to come to the First Tennessee Bank, in regards to a subject attempting to cash a stolen check, is what I was referred to by the bank teller that called the Bartlett Dispatcher.

The Defendant made no contemporaneous objection to this testimony. Appleberry testified further that a 9mm Smith & Wesson handgun was discovered in the car. Again, the Defendant made no contemporaneous objection.

On appeal, the Defendant argues that the trial court erred by failing to conduct a jury-out hearing regarding the admissibility of police testimony about both the 9mm handgun and being called to the scene of a "forgery" or an attempt "to cash a stolen check," especially since the trial court's pretrial motion order implied that such a hearing would be held. The Defendant is presumably relying on Tennessee Rule of Evidence 404(b) as well as the general relevance and prejudice principles contained in Tennessee Rules of Evidence 401, 402 and 403. We point out that this issue does not involve a Morgan hearing problem because we are not faced with impeachment evidence offered pursuant to Tennessee Rules of Evidence 607, 608 and 609. See State v. Morgan, 541 S.W.2d 385 (Tenn. 1976).

After careful consideration, we find no reversible error with regard to the trial court's manner of handling the police testimony about potential criminal charges not contained in the indictment. Although the trial judge's order concerning the Defendant's pretrial motions is somewhat confusing, it seems reasonably clear that he reserved ruling on the motion in limine to restrict police testimony about other potential criminal charges until the Defendant's concerns regarding unfair prejudice were implicated. Prior to Officer Doyle's testimony, the trial court conducted a bench conference, at which time the Defendant voiced

concerns about testimony regarding forgery or possession of a firearm, especially by a felon. The trial court instructed the prosecutor not to elicit testimony about the Defendant's status as a felon.

We believe that if the Defendant had any lingering concerns in the wake of the trial court's instructions at the bench conference, it was his duty to request a jury-out hearing to address those concerns, making appropriate references to any authority that supported his position. See Tenn. R. Evid. 404(b)(1); Neil P. Cohen et al., Tennessee Law of Evidence § 404.7 (3rd ed. 1995); see also State v. Copenny, 888 S.W.2d 450, 456 (Tenn. Crim. App. 1993) (citations omitted). Obviously, the trial judge believed he had addressed the Defendant's concerns at the bench conference. Absent a request by the Defendant, we find no error with the trial court's failure to conduct a jury-out hearing after having already considered the Defendant's issue at the bench conference.

In any event, the trial court specifically instructed the jury to disregard Officer Doyle's testimony concerning the reason he came to the bank, namely the "forgery" call. In the absence of proof to the contrary, we must presume that the jury followed the trial court's curative instruction. See State v. Compton, 642 S.W.2d 745, 746 (Tenn. Crim. App. 1982); Frazier v. State, 566 S.W.2d 545, 551 (Tenn. Crim. App. 1977) (citations omitted). Thus, we conclude that the trial court's limiting instruction cured any error regarding Officer Doyle's testimony about forgery.

Moreover, although the Defendant complains of Appleberry's reference to a subject "attempting to cash a stolen check" on appeal, he did not object to the

testimony at trial, nor did he request a jury-out hearing at the bench conference immediately prior to the testimony. Furthermore, he did not request a limiting instruction even though it seems reasonable to conclude that the trial court would have given one similar to the instruction given after Officer Doyle's testimony concerning forgery. We conclude that the Defendant cannot now complain about Officer Appleberry's testimony in light of his own failure to object at the time Appleberry testified. See T.R.A.P. 36(a); Teague v. State, 772 S.W.2d 915, 926 (Tenn. Crim. App. 1988); State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988).

Likewise, the Defendant made no contemporaneous objection to the testimony from both officers concerning the 9mm handgun discovered during the search of the car. Both officers testified about the handgun as they were describing the items retrieved from the car. Neither officer offered any detailed testimony about the firearm. On cross-examination of the State's witnesses, the Defendant elicited testimony that the handgun was discovered under the driver's side seat. Furthermore, Tina Carter testified that the handgun belonged to her. She stated that she had borrowed the handgun from a friend in Pennsylvania and was carrying it for protection purposes.

Although the handgun evidence may have been irrelevant and the trial court may have erred in admitting testimony about the firearm, we can only conclude that any error was harmless beyond a reasonable doubt. The handgun evidence was certainly not critical to the case. In fact, the Defendant was effectively distanced from the weapon through the testimony of both Tina Carter and witnesses for the State. We are satisfied that the jury would have convicted

the Defendant even in the absence of the testimony about the 9mm handgun.
See T.R.A.P. 36(b); Tenn. R. Crim. P. 52(a).

From a review of the record, we conclude that the trial court committed no reversible error in failing to conduct a jury-out hearing regarding the admissibility of police testimony about other potential criminal charges. The Defendant had ample opportunity to request such a hearing when faced with testimony which implicated his concerns, but never did so. Additionally, none of the testimony complained of affirmatively appears to have affected the result of the trial. The Defendant's second issue is therefore without merit.

In his third issue, the Defendant argues that the State improperly questioned a witness about the Defendant's prior convictions or bad acts. Tina Carter testified for the defense. On direct examination, she testified as follows:

> Q. Did Brian Martin go into the Smith Bowling house?
> A. No.
> Q. Did he help you burglarize that house?
> A. No. As a matter of fact, we got into a fight, after he found out what I did.
> Q. Why is that?
> A. Because he had already been in some trouble, and he wanted me to take the stuff back to the house, and I was afraid if I did, I'd be caught. You know, I didn't get caught in the house when I left, so I didn't figure I'd get in any trouble for it.

This testimony concluded direct examination. The assistant district attorney began cross-examination by asking, "Mr. Martin had already been in some trouble?" Carter replied, "In his past. That was before I knew him." At this point, the Defendant's counsel asked to approach the bench and apparently moved to dismiss the case.[3] The trial court denied the motion but, stating that the

---

[3] A portion of defense counsel's statements to the court were marked as "indiscernible" in the record. It is reasonably clear, however, that he moved to dismiss the case at the bench conference.

Defendant's character was not at issue, instructed the assistant district attorney not to go any further into his prior record. No limiting instruction was requested, nor was one given.

After reviewing the record, we agree with the Defendant that the assistant district attorney's question was improper. See Tenn. R. Evid. 404(b). We believe, however, that the error was harmless in the context of the present case. Tina Carter's testimony was first elicited by the Defendant on direct examination. The assistant district attorney's improper question merely repeated Carter's previous testimony. The colloquy added no significant information beyond that which had been brought forth during direct examination. As a result, we are satisfied that the Defendant would have been convicted even without the improper question, and the error in asking the question does not affirmatively appear to have affected the result of the trial. We therefore conclude that the error was harmless beyond a reasonable doubt. See State v. Williams, 851 S.W.2d 828, 833 (Tenn. Crim. App. 1992); T.R.A.P. 36(b); Tenn. R. Crim. P. 52(a). The Defendant's third issue lacks merit.

In his fourth issue, the Defendant argues that the trial court erred in allowing the State to present testimony that he had refused to make a statement to the police upon his arrest. He contends that references by two police officers to his refusal to make a statement violated his right against self-incrimination secured by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Tennessee Constitution.

The testimony at issue came from Officers David Appleberry and Don Pugh. Officer Appleberry testified on direct examination as follows:

Q. All right. When you arrested the subjects, including the defendant, did they make any statements to you, or did you engage them in conversation?
A. The conversation was limited. We mainly secured the scene. ...
Q. And the defendant did not make any statements to the Bartlett Police?
A. To my recollection, I don't recall.

The Defendant made no objection to the testimony. After conducting cross-examination of Appleberry, the Defendant moved to dismiss the case based on the assistant district attorney's questions about whether he had made a statement to police upon arrest. The trial court denied the motion but instructed the assistant district attorney not to ask questions "about any statements."

Officer Pugh testified after Officer Appleberry. Officer Pugh gave the following testimony on direct examination:

Q. Okay. Now, after the Fayette County Sheriff's Department took the defendant and Ms. Carter into custody, did you ascertain where they had come from?
A. I did.
Q. Okay. Where was that?
A. Carlisle, Pennsylvania.
Q. Both of them?
A. I think so. I'd have to look back on my notes. I talked to Mr. Martin first, and advised him of his rights, and about the extent of our conversation, I asked him how long they had been on the road, and he told me approximately two weeks. I asked him, "Was that the reason you broke into the house?" And he did not answer that, and refused to talk anymore on the advice of his attorney.

At this point, the Defendant objected and again moved to dismiss the case. The trial court denied the motion.

It is well-established that a defendant has a constitutional right to remain silent in the face of accusation, not only during trial but also upon arrest and while

-15-

in custody. The prosecution may not use at trial the fact that a defendant claimed the privilege. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Braden v. State, 534 S.W.2d 657, 660 (Tenn. 1976); Ware v. State, 565 S.W.2d 906, 908 (Tenn. Crim. App. 1978). Furthermore, a defendant's post-arrest silence ordinarily cannot be used to impeach his testimony at trial. See Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); Honeycutt v. State, 544 S.W.2d 912, 917-18 (Tenn. Crim. App. 1976). Simply put, when a defendant exercises his constitutional right to remain silent, the fact that he or she does so generally cannot be used against him or her.

On appeal, the Defendant argues that the testimony about his refusal to make a statement violated his right against self-incrimination and that the the trial court erred in admitting the testimony. We believe that the assistant district attorney's questions to Officer Appleberry were improper. See, e.g., Honeycutt, 544 S.W.2d at 917. The Defendant, however, did not make a contemporaneous objection to the testimony of Officer Appleberry. Moreover, Appleberry's testimony indicated only that he did not recall whether the Defendant had made a statement. It appears to this Court that Appleberry's testimony was not a reference to the refusal of the Defendant to make a statement, but rather a comment on the limited nature of both his duties at the scene and his interaction with the Defendant.

With regard to Officer Pugh, it is clear that his comments specifically concerning the Defendant's refusal to make a statement were inappropriate. We note that the assistant district attorney did not elicit that testimony, nor was the questioning so broad and suggestive as to risk eliciting improper testimony.

-16-

Nevertheless, Pugh's testimony infringed upon the Defendant's constitutional right to remain silent. Id.

We believe, however, that any error in the admission of the testimony of Officers Appleberry and Pugh was harmless beyond a reasonable doubt. It is important to note that the assistant district attorney made no comment whatsoever on the Defendant's post-arrest silence during argument. In this way, the case at bar is distinguishable from cases such as State v. Mabe, 655 S.W.2d 203 (Tenn. Crim. App. 1983), wherein the prosecutor's closing argument focused heavily upon the defendant's failure to make a statement upon arrest and resulted in the reversal of the defendant's conviction. Moreover, the trial court gave a jury instruction regarding the Defendant's right to remain silent and the fact that no inference can be drawn from such silence. We must presume that the jury followed the trial court's instructions. See State v. Locke, 771 S.W.2d 132, 138-39 (Tenn. Crim. App. 1988) (citing Ford v. State, 101 Tenn. 454, 458, 47 S.W. 703, 705 (1898)). In the absence of prejudicial comments by the assistant district attorney, we conclude that the trial court's instructions cured any possibility of harm from the testimony of Officers Appleberry and Pugh in the context of the present case. See State v. Flanagan, 223 Tenn. 134, 138-39, 443 S.W.2d 25, 27 (Tenn. 1969); see also Johnson v. State, 596 S.W.2d 97, 104 (Tenn. Crim. App. 1979). The Defendant's fourth issue is therefore without merit.

In his fifth issue, the Defendant argues that the trial court erred in sentencing him to eight years as a Range II multiple offender. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that

the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principals set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The Defendant has three specific complaints about his sentence, the first of which involves the State's notice of intent to seek sentencing as a multiple offender. The Defendant contends that the State's notice was defective because it did not include properly certified copies of his convictions from Pennsylvania.

As a result, he argues that the trial court erred in sentencing him as a Range II multiple offender.

The Defendant was tried on April 8, 1994. On November 24, 1993, more than four months prior to trial, the State filed its notice to seek enhanced punishment. In that notice, the State listed six prior convictions from Pennsylvania.[4] The notice set forth the date of conviction, the nature of the conviction, and the court of conviction.

The Defendant argues that the State's notice did not comply with Tennessee Code Annotated section 40-35-202(a) in that it did not include properly certified copies of the Pennsylvania convictions. We do not believe that Tennessee Code Annotated section 40-35-202(a) requires the State to include certified copies of convictions when filing its notice to seek enhanced punishment. The only requirement in terms of content of the notice is that it "must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions." Tenn. Code Ann. § 40-35-202(a) (1990). It is clear that the State's notice in the present case complied with those requirements. Accordingly, we conclude the Defendant's first allegation of sentencing error lacks merit.

In his second allegation of sentencing error, the Defendant contends that the copies of the Pennsylvania convictions introduced at his sentencing hearing

---

[4] At the sentencing hearing, the State offered proof of seven Pennsylvania convictions. One of them, a misdemeanor theft charge alleged to have occurred on February 18, 1990 to which the Defendant pleaded guilty on June 5, 1990 (#601 Criminal 1990(B-1)), was not listed on the State's notice to seek enhanced punishment. As such, we will not consider that conviction in reviewing this issue.

were not properly certified.  We believe the Defendant's contention is clearly without merit.  Each of the convictions introduced by the State at the sentencing hearing is certified as a true copy from the records of the Clerk of the Courts of Cumberland County, Pennsylvania.  A Deputy Clerk signed the copies and affixed the seal of the Cumberland County Courts.  We therefore conclude that the certified copies of the Defendant's prior convictions were properly admitted pursuant to Tennessee Rules of Evidence 902.  The Defendant's second allegation of a sentencing error is without merit.

In his third allegation of a sentencing error, the Defendant contends that the trial court improperly applied and weighed enhancement and mitigating factors. The sentencing hearing took place on April 28, 1994. The State's proof established that the Defendant had at least three prior felony convictions and qualified as a Range II multiple offender. See Tenn. Code Ann. § 40-35-106(a)(1).  The appropriate sentencing range for aggravated burglary, a class C felony, was six to ten years.  At the conclusion of the hearing, the trial court sentenced the Defendant to eight years imprisonment.  The trial court later entered an order reflecting what had occurred at the sentencing hearing.

The record is somewhat unclear as to which enhancement factors were applied.  There is no doubt that the trial court applied the "previous history of criminal behavior in addition to that necessary to establish the sentencing range" enhancement factor. See Tenn. Code Ann. § 40-35-114(1).

The trial court also applied as an enhancement factor that the offense involved "more than one actor." This language does not correspond to any of the

-20-

statutory enhancement factors set forth at Tennessee Code Annotated section 40-35-114. From a review of the argument prior to the imposition of sentence, however, it appears that the trial court was referring to the "leader in the commission of an offense involving two or more actors" enhancement factor. See Tenn. Code Ann. § 40-35-114(2).

In addition, in the sentencing order entered after the imposition of sentence at the sentencing hearing, the trial judge stated that he applied the enhancement factor for a "felony committed while on parole." See Tenn. Code Ann. § 40-35-114(13)(B). As he imposed sentence at the hearing, however, the trial judge stated that he was not considering whether the Defendant was on parole at the time of the present offense. This statement came in response to the Defendant's objection to the hearsay in the presentence report concerning his parole status from two burglary convictions in Pennsylvania. Given the Defendant's objection to that aspect of the presentence report and the trial court's recognition of that objection at the sentencing hearing, we will not consider Tennessee Code Annotated section 40-35-114(13)(B) as an enhancement factor in our review of this issue.

It is clear from the record that the trial court applied only one mitigating factor, namely that the "conduct neither caused nor threatened serious bodily injury." See Tenn. Code Ann. § 40-35-113(1). The Defendant offered several other mitigating factors for consideration, all of which the trial court rejected. It is also clear that the trial court found that the enhancement factors outweighed the mitigating factor.

We find no error with regard to the trial court's application of the "previous history of criminal behavior" enhancement factor. The State introduced proof of multiple misdemeanor convictions in addition to the felony convictions used to support sentencing the Defendant as a Range II multiple offender. Likewise, we find no error with regard to the trial court's application of only one mitigating factor, that the Defendant's conduct "neither caused nor threatened serious bodily injury."

From our review of the record, however, we conclude that the trial court erred in applying the "leader in the commission of the offense" enhancement factor pursuant to Tennessee Code Annotated section 40-35-114(2). The Defendant's conviction rested on the circumstances discovered upon his arrest at the bank and the inference arising from possession of recently stolen property. The State offered no proof at trial or at the sentencing hearing from which the trial court could have reasonably concluded that the Defendant qualified as a leader in the commission of the offense. As a result, it was error for the trial court to apply that enhancement factor.

Yet we believe that there was another appropriate enhancement factor not applied by the trial court. The certified copies of convictions from Pennsylvania clearly reveal that two of the Defendant's prior felony convictions for burglary, numbers 601 Criminal 1990(A-2) and 1928 Criminal 1989, were committed "while the defendant was on parole or otherwise out of jail." Given that evidence, we believe that trial court could have properly found that the Defendant has a

"previous history of unwillingness to comply with the conditions of a sentence involving release into the community." <u>See</u> Tenn. Code Ann. § 40-35-114(8).[5]

Having reviewed the applicable enhancement and mitigating factors, we conclude that the trial court did not err in sentencing the Defendant to the mid-range sentence of eight years imprisonment. Although the trial judge incorrectly applied the "leader in the commission of the offense" enhancement factor, he did not apply the appropriate "previous history of unwillingness to comply with release into the community" enhancement factor. Because we find no other sentencing errors, we believe that the trial court's sentence of eight years is adequately supported by the record. Thus, the Defendant's fifth issue is without merit.

For the reasons set forth in the discussion above, we conclude that the Defendant's issues on appeal lack merit. We therefore affirm the judgment of the trial court.

---

[5] We point out that we are not considering whether the Defendant was on parole from those Pennsylvania burglary convictions (numbers 601 Criminal 1990(A-2) and 1928 Criminal 1989) at the time of the offense involved in the case <u>sub judice</u>, as is alleged in the presentence report. Rather we are considering the fact, established by the certified copies of the Pennsylvania convictions introduced at the sentencing hearing, that the Defendant committed those two Pennsylvania burglaries while he was on some form of release into the community from prior convictions.

_____
DAVID H. WELLES, JUDGE


CONCUR:


_____
JOSEPH M. TIPTON, JUDGE


_____
JERRY SCOTT, SPECIAL JUDGE