James Brown **BRADEN** et al.,
Petitioners,

v.

**STATE of Tennessee, Respondent.**

Supreme Court of Tennessee.

March 1, 1976.

Karl P. Warden, Franklin, Clark H. Tidwell, Nashville, Emery B. Gill, Centerville, for petitioners.

R. A. Ashley, Jr., Atty. Gen., David L. Raybin, Asst. Atty. Gen., Nashville, for respondent.

OPINION

COOPER, Justice.

James Brown Braden, Paul William Swindell, and Douglas Graham Moulton were convicted in the Criminal Court of Hickman County of possession of marijuana, with the intent to resell the same in violation of the Drug Control Act of 1971. Each of the defendants was sentenced to serve not more than, nor less than, one year in the penitentiary. The convictions were affirmed by the Court of Criminal Appeals, with each member of the three judge panel writing a separate opinion. This court granted certiorari to review the holding of the Court of Criminal Appeals that it was not error for the District Attorney General, in his closing argument, to comment on the failure of the defendants to make a statement to the arresting officers in explanation of defendants' presence at a marijuana cache.

In late August, 1972, agents of the Federal Alcohol, Tobacco, and Firearms Division, searching for an illegal distillery in Hickman County, found a cache of approximately 115 pounds of marijuana hidden in a brush arbor in a ravine near the Primm Springs Road. Subsequently, they found the distillery nearby.

The marijuana find was reported to agents of the Tennessee Bureau of Investigation. Thereafter, agents of both govern-

ments took up surveillance of the area, the TBI agents being primarily interested in the marijuana and the federal agents being primarily interested in the illegal distillery. On September 2, 1972, the agents observed the defendants drive into the area in a jeep and park it in a field at the end of the road not far from the location of the marijuana cache. The defendants then walked down a path that ended near the arbor. Later they were observed pulling brush from the arbor. On defendants leaving the arbor, they were arrested, searched, handcuffed, photographed, and advised of their constitutional rights. The search revealed that Braden and Swindell each had a small amount of marijuana on his person.

On trial the District Attorney General inquired of the TBI agent, Whitlatch, whether any of the defendants made a statement to the arresting officers and agent Whitlatch replied that they had not. Defense counsel then inquired of Mr. Whitlatch whether the defendants made a statement about ownership of the property on which the marijuana was found, which was answered in the negative.

The defendants testified in their own defense, each giving exculpatory testimony to the effect that they were exploring the countryside looking for moonshine still when they came upon the brush arbor by accident, and out of sheer curiosity they had removed a small amount of the marijuana. On cross-examination of the defendant Moulton, the District Attorney General, without objection by defense counsel, inquired whether the defendants had given any explanation to the arresting officers for their appearance at the brush arbor. Defendant Moulton replied that no such statement was made.

The District Attorney General then made the following argument to the jury,

" . . . The men were taken back to the jail and were questioned by both Mr. Whitlatch and the Sheriff and others, and at this point something very significant happened they don't want to make an explanation, they don't want to tell the officers that they were just sightseeing, just driving around, just the innocent victims of a set of bizarre circumstances as they present to you today that they don't want to say anything."

Objection by defense counsel to the argument was overruled without comment by the trial judge. The District Attorney General continued with his argument, telling the jury:

"In this crucial time when the Officers would have the opportunity to have verified and checked out this situation they don't tell them that they were out there just riding around and they make no explanation whatsoever. And of course significantly two of them have samples of the marijuana which they admit was taken from this brush arbor where this sizable quantity was hanging and we submit these samples were taken to determine whether or not this material had reached the proper maturity that they intended for it to before taking it for the purpose of selling it. Now in answer to this, none of which is really denied and none of it could be denied because all this was seen by a large number of responsible people. In answer to this they give you their explanation that they were out sightseeing and they just happened to stop at this particular point and just happened to go over to this hidden brush arbor which couldn't be seen, everyone admits that it couldn't be seen from the road where they were . . . "

Defendants contend the argument of the District Attorney General "was a comment on the failure of the defendants to make statements to the arresting officer, after the defendants had been advised of their constitutional right to remain silent and (a suggestion) that such a failure was evidence of guilt on the part of the defendants." Defendants insist, and we think properly, that such argument was improper in that it penalized the defendants for exercising their constitutional right to be silent.

■ That a defendant has a constitutional right to remain silent in the face of accusations against him, not only during his trial but also upon arrest and while in custody, is a rule so fundamental as to require little elaboration. Constitution of the United States, Amendment 5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). As a corollary of this principle, " . . . it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that [the individual] stood mute or claimed his privilege in the face of accusation." *Miranda v. Arizona,* supra, 384 U.S. at 468 N. 37, 86 S.Ct. at 1625.

■■ The difficulty in this case is that the defendants did not maintain silence. Instead, they testified in their own defense. When they did so they subjected themselves to the impeaching effect of proof of any prior inconsistent statements they might have made, which would otherwise be inadmissible as being obtained in violation of defendants' *Miranda* rights, and to the impeaching effect of any prior inconsistent actions on their part. *See Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *McGautha v. California,* 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). See also *Kelley v. State,* 478 S.W.2d 73 (Tenn.Ct.Cr.App.) wherein the prosecution was permitted to show defendant's silence while in custody of police officers where the defendant undertook to testify that "he was bent upon reporting the facts of this burglary as soon as he could get in touch with certain other officers." In these cases the courts sought to and did strike a balance between protecting the self-incrimination bar of the Fifth Amendment and allowing full testing of the truth of defendant's trial testimony. We agree with this objective, but hasten to emphasize that evidence of pre-trial silence of the defendant must be admitted with caution and then only where such silence is patently inconsistent with defendant's testimony. For example, *Kel-*

*ley v. State,* supra. If the standard to be met by the prosecution in introducing evidence of pretrial silence of a defendant, and in arguing to the jury a position based on defendant's pretrial silence, was any less strict, a defendant would be on the horns of a dilemma when arrested and advised of his *Miranda* rights. He would have to assert his innocence immediately or not at all, except at the peril of having the prosecution using his initial silence against him. This would have a chilling effect on a defendant's assertion of his constitutional right to remain silent and, consequently, can not be permitted.

In this case, as heretofore noted, the defendants did not object to the admission in evidence of testimony showing that defendants were advised of their right to remain silent. And, in the absence of the argument to the jury by the District Attorney General based on the pretrial silence of the defendants, no prejudice would have resulted to the defendants from the showing of their pretrial silence. *State v. Flanagan,* 223 Tenn. 134, 443 S.W.2d 25 (1969). The question then is: Was it error for the District Attorney General to comment on the pretrial silence of the defendants in his argument to the jury?

The Court of Criminal Appeals viewed the argument of the District Attorney General "not [as] an attempt . . . to convict the defendants by their silence, but to reflect on the credibility of their testimony by pointing out the inconsistency between their testimony at the trial and their actions when caught at the marijuana cache," and found no prejudicial error in the argument of the District Attorney General, citing *State v. Flanagan.*

■ We see no basic inconsistency between defendants' exculpatory testimony and their remaining mute during the time they were under arrest and undergoing custodial interrogation. Defendants were arrested, searched and their hands were handcuffed behind them. They then were given

the *Miranda* warnings, and thus were made aware of their right to remain silent and the fact that anything they said would be used against them. Under these circumstances, defendants' failure to offer an explanation of their presence at the brush arbor to the police officers could as easily be taken to indicate reliance on their right to remain silent as to support an inference that the explanatory testimony given on trial was a later fabrication. *Grunewald v. United States,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); *Minor v. Black, Superintendent,* 527 F.2d 1 (6 Cir. 1975); *United States v. Anderson,* 162 U.S.App.D.C. 305, 498 F.2d 1038 (1974) cert. granted sub nom., *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Johnson v. Patterson,* 475 F.2d 1066 (10th Cir.), cert. denied, 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124 (1973). See also *O'Brien v. State,* 221 Tenn. 346, 426 S.W.2d 507 (1968). The pretrial silence of the defendants not being patently inconsistent with their testimony at the trial, it was error for the District Attorney General to show defendants' pretrial silence and then to comment, in argument, on the failure of the defendants "to tell their story" prior to trial.

■ The state takes the position that the use made of defendants' pretrial silence was "harmless error." We do not see it that way. To find harmlessness beyond a reasonable doubt we would have to conclude that, absent the evidence of pretrial silence and the closing argument, "no juror could have entertained a reasonable doubt" as to defendants' guilt. *United States v. Matos,* 444 F.2d 1071 (7th Cir. 1971). In this case, the credibility of the defendants was the controlling issue. A prime factor in the prosecution's attack on this credibility was the defendants' pretrial silence. As pointed out in *United States v. Hale,* 95 S.Ct. 2133, 2138 (1975):

> "The danger is that the jury is likely to assign much more weight to the defendant's previous silence than is warranted. And permitting the defendant to explain the reasons for his silence is unlikely to overcome the strong negative inference that the jury is likely to draw from the fact that the defendant remained silent at the time of his arrest."

From our review of the evidence we feel that we cannot say with equanimity that no juror would have accepted defendants' testimony absent the evidence of pretrial silence and the comments of the District Attorney General on defendants' silence.

The judgment of the Court of Criminal Appeals is reversed and the case is remanded to the Criminal Court of Hickman County for a new trial.

FONES, C. J., and HENRY, BROCK and HARBISON, JJ., concur.