IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 19, 2021

FILED
08/23/2021
Clerk of the
Appellate Courts

## STATE OF TENNESSEE v. KAVASIA S. BONDS AND CHARLES ALLEN JONES

### Appeal from the Criminal Court for Davidson County
### No. 2018-D-2416    Angelita Blackshear Dalton, Judge

_____

### No. M2020-00323-CCA-R3-CD

_____

Defendants, Kavasia S. Bonds and Charles Allen Jones, along with a co-defendant Brian Davis, were indicted by the Davidson County Grand Jury for aggravated assault while acting in concert with two or more other persons.  Following a jury trial, Defendants Bonds and Jones were convicted as charged, and the jury was unable to reach a unanimous verdict as to Defendant Davis.  For their convictions, Defendant Bonds was sentenced to 16 years' incarceration, and Defendant Jones was sentenced to 14 years.  In this appeal as of right, Defendants Bonds and Jones both challenge the sufficiency of the convicting evidence.  Defendant Bonds also asserts that the trial court erred by admitting into evidence a photograph of the victim's eye and that the prosecutor improperly commented on Defendant Bonds' silence at trial during closing arguments.  Having reviewed the entire record and the briefs of the parties, we find no error and affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Jefre S. Goldtrap (on appeal), Brian Love (at trial), Nashville, Tennessee, for the appellant, Kavasia S. Bonds

Nick McGregor (on appeal), Anthony Thompson (at trial), Nashville, Tennessee, for the appellant, Charles Allen Jones.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Amy M. Hunter, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

*Trial*

On July 6, 2018, Defendants and the victim, Alvin Smith, were incarcerated at the Davidson County Jail. According to Mr. Smith, at around 8:00 a.m., Defendant Jones woke up Mr. Smith and asked him for the remote control to the "day room" television. Mr. Smith's bunk was close to the door to the day room. Mr. Smith told Defendant Jones that he did not have the remote, and they "had words" in the day room. Defendant Jones and Mr. Smith both entered the bathroom, and they continued to argue while Mr. Smith used the urinal. Defendant Bonds was standing by the sinks. Defendant Davis then entered the bathroom, pushed the victim and said, "that's my homeboy." Defendant Jones then hit Mr. Smith in his eye, and all three men "got to tussling[.]" Defendant Bonds grabbed Mr. Smith from behind, and Defendants Jones and Davis continued to kick and punch Mr. Smith. Mr. Smith believed that the defendants stopped attacking him upon seeing the amount of blood or because other people entered the bathroom. He testified that Defendant Jones spit on him after the assault. Mr. Smith removed his shirt and tried to stop the bleeding. Another inmate brought Mr. Smith a towel, but he could not get the bleeding to stop. Mr. Smith told Defendant Davis that he "couldn't believe they did [him] like that," and Defendant Davis told Mr. Smith to tell the guards that he hit his eye on his bunk.

Correctional Officer Andrew Cromer testified that the victim got his attention through a window. The victim was holding a washcloth over his face. He told Officer Cromer that he had hit his eye on his bunk and that he could not stop the bleeding. Officer Cromer placed the victim in a holding cell while he called for medical assistance. Mr. Smith testified that the "pain was excruciating[.]" Mr. Smith was taken to Meharry Hospital before being transferred to Vanderbilt for immediate surgery. Mr. Smith was told that he lost his vision in that eye. Doctors eventually removed Mr. Smith's eye because "the pain wouldn't stop[.]" Mr. Smith testified that his knee, hip, and back were also injured in the incident, and he had to walk with a cane.

Lieutenant David Hodges photographed the victim's injured eye. He testified that Mr. Smith's "eyeball was squashed" "like a grape[.]" Lieutenant Hodges told the victim that he was "never going to see out of that eye again" and that he should disclose who had caused his injuries. The victim then disclosed the defendants' names. Officer Cromer viewed video footage of the area outside the bathroom to "verify [the victim's] statements." There were no cameras inside the bathroom, where the assault occurred, but Officer

Cromer confirmed that the video showed the victim and all three defendants enter the bathroom around the time of the assault.[1]

Officer Cromer explained that it was common for inmates to refuse to disclose fights and for inmates to clean up after fights to avoid detection. After the victim was transported to a hospital by ambulance, the three defendants were identified and placed in separate holding cells. Lieutenant Hodges did not see any injuries on any of the defendants, and he photographed each of the defendants' faces.

Defendant Jones testified that he was watching television in the day room on the day of the assault. He went to wake up the victim because Mr. Smith always kept the remote control. Defendant Jones testified, "I wake him up in the morning and he give[s] it to me and he'll go back to sleep." On that morning, Mr. Smith denied having the remote. Defendant Jones asked someone else for the remote, and that person told him that Mr. Smith had it. Defendant Jones again woke up Mr. Smith and asked him, and Mr. Smith denied having it. Defendant Jones went back to the day room. A couple of minutes later, Mr. Smith got "in [his] face" about having woken him up. Defendant Jones was shocked and scared because Mr. Smith was much bigger than him. Defendant Jones tried to get away from Mr. Smith, and Mr. Smith followed him into the bathroom. Defendant Jones testified that Mr. Smith began hitting him once inside the bathroom. He testified that Mr. Smith put him in a headlock, and they continued to struggle. They fell to the ground, and Defendant Jones supposed that Mr. Smith injured his eye when they fell. He testified that Defendant Bonds pulled Mr. Smith off of him. Defendant Jones testified that Defendant Bonds and Defendant Davis were "trying to calm [Mr. Smith] down."

*Analysis*

*Sufficiency of the Evidence*

Defendants Jones and Bonds argue that the evidence was insufficient to support their convictions. Specifically, Defendant Jones contends that the evidence does not show that he caused injuries to the victim or that he is criminally responsible for the acts of another. Defendant Bonds contends that there was insufficient proof to establish that they acted in concert because a third defendant, Mr. Davis, was not convicted of the offense, which requires that a defendant act in concert with "two or more other persons." The State responds that the evidence was sufficient to support the convictions. We agree with the State.

---

[1] We are unable to view the video recording that was admitted as an exhibit at trial; however, the parties do not dispute that the video shows the victim and defendants enter and exit the bathroom.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Id*. (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). Therefore, the prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id*. The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Defendants were convicted of aggravated assault in concert with two or more other persons. A person commits the offense of aggravated assault who intentionally or knowingly "causes bodily injury to another" and the assault results in serious bodily injury. T.C.A. §§ 39-13-101(a)(1), -102(a)(1)(A)(i). "Serious bodily injury" includes "[e]xtreme physical pain[,]" "[p]rotracted or obvious disfigurement[,]" and "[p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty[.]" *Id*. § 39-11-106(a)(36). A person "acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Id*. § 39-11-302(a). A person "acts knowingly with respect to the conduct or to the circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." *Id*. § 39-11-302(b). Furthermore, "[a] person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." *Id*.

Tennessee Code Annotated section 39-12-302 provides that "[a] crime of force or violence committed while acting in concert with two (2) or more other persons shall be classified one (1) classification higher than if it was committed alone." Ordinarily, aggravated assault that results in serious bodily injury is a Class C felony. *Id*. § 39-13-

- 4 -

102(e)(1)(A)(ii). However, when committed while acting in concert with two or more persons, it is a Class B felony. *Id*. § 39-12-302(a). The question of whether one defendant is acting in concert with another is one of fact for the jury. *Rice v. State*, 475 S.W.2d 178, 179 (Tenn. Crim. App. 1971). This Court has likened "acting in concert" with criminal responsibility in the context of a case involving the commission of a robbery. *State v. Lenardo DeQayne Spencer, Reginald Tyrone Baxter, Jr., and Deandre Jajuan Dean*, No. M2016-01219-CCA-R3-CD, 2017 WL 2800147, at \*6 (Tenn. Crim. App. June 28, 2017) (citing T.C.A. § 39-11-402(2)) (explaining that a defendant "acts in concert with another if the defendant acts 'with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense.'"), *perm. app. denied* (Tenn. Nov. 16, 2017).

In the light most favorable to the State, the evidence introduced at trial showed that Defendant Jones woke the victim on the morning of the assault, demanding the remote control for the television. Shortly thereafter, Defendant Jones and the victim entered the bathroom around the same time and continued to argue. The victim noticed Defendant Bonds standing near the sinks as Defendant Davis entered the bathroom and pushed the victim, saying, "that's my homeboy." Defendant Jones then punched the victim's eye. All four men began to tussle, and Defendant Bonds grabbed the victim from behind and held his arms behind his back while Defendants Jones and Davis continued to hit and kick the victim. The victim testified that he was unable to stop the bleeding and that the pain was "excruciating." He was transported to Meharry Hospital before being transferred to Vanderbilt, where he underwent immediate surgery and ultimately lost his eye.

Defendant Jones argues that the only evidence implicating him was the testimony of the victim and that the victim was not credible because he initially lied about how he sustained his injuries. The determination of issues of witness credibility and the resolution of conflicts in testimony rest squarely within the province of the jury. *Bland*, 958 S.W.2d at 659. We do not revisit the jury's determinations with respect to those issues on appeal. *See*, *e.g.*, *Wagner*, 382 S.W.3d at 297.

Defendant Bonds argues that the evidence was insufficient to support his conviction because the jury did not reach a unanimous verdict as to Defendant Davis. He contends that only two people were convicted of an offense that requires three people acting in concert. Defendant Bonds' argument is essentially an argument against inconsistent verdicts. Inconsistent verdicts may occur in trials of multiple defendants and in trials of multiple charges against a single defendant. Appellate courts "will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if [the court is] satisfied that the evidence establishes guilt of the offense upon which the conviction was returned." *Wiggins v. State*, 498 S.W.2d 92, 94 (Tenn. 1973).

We conclude that there was sufficient evidence from which a rational jury could have concluded that the three charged defendants were acting in concert while committing the aggravated assault. In a similar case, a panel of this Court upheld a defendant's conviction for aggravated assault in concert where an inmate attacked an officer and was soon joined by another inmate and the defendant. *State v. Kendrick Rivers*, No. W2018-00861-CCA-R3-CD, 2019 WL 3776026, at \*5 (Tenn. Crim. App. Aug. 9, 2019), *no perm. app. filed*. In that case, the entire attack lasted 30 seconds. Here, the victim testified that Defendant Bonds held him while Defendants Jones and Davis hit and kicked him. The evidence was sufficient to establish that the defendants acted with the intent to assist in the commission of an aggravated assault.

*Admission of Photograph*

Defendant Bonds argues that the trial court abused its discretion by admitting into evidence a photograph of the victim's injured eye. Defendant asserts that the photograph was more prejudicial than probative and that it was unnecessary because the victim's testimony satisfied the "extreme pain and protracted disfigurement" elements of the offense. The State responds that the trial court properly admitted the photograph into evidence.

Initially, we observe that Defendant Bonds did not raise this issue in a pretrial motion or otherwise object to the admission of the photograph of the victim's eye at trial. The record shows that Defendant Jones filed a motion in limine seeking to exclude from evidence "any photographs of the alleged victim[']s immediate injuries as the probative value of such evidence is far outweighed by the prejudicial effect it will have on the members of the jury." The record does not include a similar motion filed by Defendant Bonds. At a pretrial hearing on Defendant Jones' motion, defense counsel for Defendant Jones argued that a photograph of the victim's "bloody eye" was unnecessary to establish that the victim suffered severe bodily injury. The trial court ruled that the photograph of the victim's eye was admissible, concluding that although the photograph was "pretty graphic," it was relevant to show "the serious nature of the victim's bodily injuries. . . ."

In his brief on appeal, Defendant Bonds states that "the victim was asked to identify and show a picture of his damaged eyeball" and that "[t]rial counsel for [Defendant] Bonds objected to this viewing as a violation of T[enn.] R[.] E[vid.] 403." However, Defendant Bonds does not cite to the record, and a transcript of the trial contradicts this assertion. Following the trial court's denial of Defendant Jones' motion in limine, a photograph of the victim's injured eye was admitted without objection at trial. The State then asked the trial court for permission to have the victim "show the jury the injury to his eye now[,]" and trial counsel for Defendant Jones objected, stating, "[t]hey saw the picture. I don't know why they would need to do that." The trial court allowed the victim to remove his

eyepatch at trial and show the jury his eye, finding that it was relevant to show the victim's "protracted disfigurement." Although Defendant Bonds did not file a pretrial motion or otherwise object to the admission of the photograph at trial, he raised the issue in his amended motion for new trial. Therefore, we will consider the merits of the issue.

The admissibility of photographic evidence lies within the sound discretion of the trial court, and its ruling on admissibility will not be disturbed on appeal absent a showing of an abuse of that discretion. *State v. Carruthers*, 35 S.W.3d 516, 576-77 (Tenn. 2000); *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993); *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978) (quoting Tenn. R. Evid. 403 Advisory Comm. Cmts.). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Tenn. R. Evid. 403. To decide whether visual evidence is admissible, the court determines the relevance of the evidence and weighs its probative value against any undue prejudice. *Id*. It is deemed "unfairly prejudicial" if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id*.

Graphic, gruesome, or even horrifying photographs of crime victims may be admitted into evidence if they are relevant to some issue at trial and their probative value is not substantially outweighed by their prejudicial effect. *Banks*, 564 S.W.2d at 949-51. On the other hand, "if they are not relevant to prove some part of the prosecution's case, they may not be admitted solely to inflame the jury and prejudice them against the defendant." *Id*. at 951 (citing *Milam v. Commonwealth*, 275 S.W.2d 921 (Ky. 1955)). "As a general rule, where medical testimony adequately describes the degree or extent of an injury, gruesome and graphic photographs should not be admitted." *State v. Collins*, 986 S.W.2d 13, 21 (Tenn. Crim. App. 1998).

Here, the trial court admitted one color photograph of the victim's injured eye. While the photograph of the victim's eye is somewhat graphic, we agree with the trial court that it was relevant to establish the severity of the victim's injury. We also conclude that the probative value was not substantially outweighed by the danger of unfair prejudice. Despite the victim's testimony that he suffered extreme pain and loss of vision, the photograph was properly admitted. "'[P]hotographs are not necessarily rendered inadmissible because they are cumulative of other evidence or because descriptive words could be used.'" *State v. Willis*, 496 S.W.3d 653, 728 (Tenn. 2016) (quoting *State v. Derek Williamson*, No. M2010-01067-CCA-R3-CD, 2011 WL 3557827, at *9 (Tenn. Crim. App. at Jackson, Aug. 12, 2011), *perm. app. denied* (Tenn. Dec. 14, 2011)). "Thus, the fact that the State could have made its case using only descriptive words is a consideration in

balancing the probative value against the prejudicial effect, but does not mandate exclusion of the photographs." *Banks*, 564 S.W.2d at 951. The trial court did not abuse its discretion by admitting the photograph into evidence.

*Closing Argument*

Defendant Bonds contends that the prosecutor improperly commented on his constitutional right to remain silent during closing arguments. The State argues that Defendant Bonds "opened the door" to a rebuttal comment by the prosecutor and that, in any event, the prosecutor's comment during rebuttal closing argument was not a comment on Defendant's pretrial silence. We agree with the State.

The scope of closing argument is subject to the trial court's discretion and will not be reversed absent a clear showing of abuse of discretion. *See State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1998); *Smith v. State*, 527 S.W.2d 737, 739 (Tenn. 1975). It has long been recognized that closing argument is a valuable privilege that should not be unduly restricted. *See State v. Bane*, 57 S.W.3d 411, 425 (Tenn. 2001) (citing *State v. Bigbee*, 885 S.W.2d 797, 809 (Tenn. 1994)). However, closing argument "must be temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law." *State v. Middlebrooks*, 995 S.W.2d 550, 557 (Tenn. 1999). When determining whether an improper argument constitutes reversible error, this Court considers whether the conduct was so improper or the argument so inflammatory that it prejudicially affected the jury's verdict. *See Middlebrooks*, 995 S.W.2d at 559.

It is well-established that a defendant may not be penalized at trial for the exercise of his constitutional right to remain silent after arrest. *Doyle v. Ohio*, 96 S. Ct. 2240, 2245 (1976); *Braden v. State*, 534 S.W.2d 657, 661 (Tenn. 1976). Generally, the prosecution may not comment at trial that a defendant invoked the right to remain silent in the face of accusation. *Braden*, 534 S.W.2d at 660; *Ware v. State*, 565 S.W.2d 906, 908 (Tenn. Crim. App. 1978). However, a comment on a defendant's silence may be harmless error that does not require a mistrial. *See Honeycutt v. State*, 544 S.W.2d 912, 917-18 (Tenn. Crim. App. 1976).

During his closing argument, counsel for Defendant Bonds criticized the investigation of the case, stating that Officer Cromer "did not ask anybody but these three witnesses, these three defendants here what happened. He didn't question anyone else." During a bench conference, the prosecutor argued that she should be allowed to respond to defense counsel's statement. The trial court noted that Defendant Bonds had opened the door, and the court ruled that the State had a right to respond. The trial court noted, "she is not going to say anything about what was said or not said. I think the only thing that she

is going to say is that after talking to all three they were charged." During the State's rebuttal argument, the prosecutor said, "[counsel for Defendant Bonds] said that the investigators asked everybody what happened in this case and after asking everybody in this case what happened these three defendants got charged."

On appeal, Defendant Bonds contends that the prosecutor's comment implied that Defendant gave a pretrial statement, arguing that "[t]he effect [of which] was to make it appear that [Defendant] Bonds offered some sort of testimonial proof which proof was never offered [at trial]." As the trial court noted, Defendant Bonds "opened the door" to the prosecutor's comment during rebuttal closing argument by commenting during his closing argument that Officer Cromer interviewed the three defendants. Counsel for Defendant Bonds also elicited testimony during his cross-examination of Officer Cromer that he "only talked to the people [the victim] said were involved."

We note that "prosecutorial responses to defense arguments are clearly permitted[.]" *State v. Jackson*, 444 S.W.3d 554, 590 (Tenn. 2014); *see State v. Sutton*, 562 S.W.2d 820, 823-24 (Tenn. 1978) ("Where the criminal defendant raises an issue in his defense, he cannot complain of references to the issue by the prosecution, or argument on that issue, so long as the argument is fairly warranted by the facts and circumstances of the case."). Here, the prosecutor's comment was merely a response to Defendant Bonds' comment during closing argument rather than a comment on Defendant's pretrial silence or his right not to testify. Accordingly, we conclude that the prosecutor's comment was not of such a character that the jury would necessarily have taken it to be a comment on Defendant's failure to testify. *See Jackson*, 444 S.W.3d at 588.

CONCLUSION

Based on the foregoing reasons, we affirm the judgments of the trial court.

_____
TIMOTHY L. EASTER, JUDGE