# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs April 23, 2013

## JOHNNY L. HEITZ v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sullivan County**
**No. C57965    Robert H. Montgomery, Jr., Judge**

---

**No.  E2012-01171-CCA-R3-PC - Filed September 5, 2013**

---

The Petitioner, Johnny L. Heitz, appeals the Sullivan County Criminal Court's denial of his petition for post-conviction relief from his aggravated kidnapping conviction and resulting thirty-year sentence.  He contends that trial counsel rendered ineffective assistance by failing to object to two statements made by prosecutors during closing argument.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Gene G. Scott, Jr., Jonesborough, Tennessee, and J. Matthew King, Kingsport, Tennessee, for the appellant, Johnny L. Heitz.

Robert E. Cooper Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; Barry Staubus, District Attorney General; and Leslie A. Foglia, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This court summarized the facts of the case in the Petitioner's appeal of his conviction:

> Shortly after 4:00 p.m., the victim arrived at the Finish Line Car Wash and drove her car into the second stall from the end.  As she washed her vehicle, she noticed that a blue Chevrolet pickup truck pulled into the end stall.  The victim first observed the defendant and a female passenger exit the truck and then heard the car wash activate in their stall.  Shortly thereafter, the

victim saw the defendant out of the corner of her eye as he walked past her stall toward the change machine. She then heard him say, "Do you have a dollar?" The victim ignored the question as she believed it was directed to the female passenger. The defendant repeated the question, and the victim again ignored him. As the victim continued washing her car, the defendant "came up behind [her] and . . . put [her] throat in the crick of his arm and cut off her air," making her unable to breathe. The defendant pulled her back tight against him, backed up close to the wall of the car wash, and told the victim twice to "Get in the car." The defendant used force in restraining the victim, and she was unable to escape. The victim, initially, was not able to see the defendant, but, at some point during the encounter, she was able to turn and see him. After she began screaming, the victim was able to escape the defendant, and she ran toward the street with the intention of flagging down a car. According to the victim, the defendant's actions caused her physical pain.

Before the victim reached the street, she encountered Ronnie Roberts, who had been washing his motorcycle in a separate stall. After hearing the victim scream and seeing her run from the stall, Roberts proceeded toward her. Roberts and the victim observed the defendant return to his truck and quickly exit the parking lot. Roberts observed that the victim was upset and crying, and she informed him that someone had tried to kidnap her. The victim saw the defendant's license plate and began to continually recite the number out loud.

A security camera in place at the car wash filmed various areas of the car wash parking lot. The monitor was located inside M & M Sporting Goods, which was located next door to the car wash. On the monitor, Debbie Miller and Christy Bailey observed a woman run from a car wash stall in a panicked state. They also saw a blue Chevrolet truck fleeing the scene. Miller went to the car wash to investigate, and the victim informed her that someone had attacked her. Miller then escorted the victim inside the sporting goods store and phoned the police. She gave the videotape to police, and it was determined that the incident inside the stall, which was not visible on the tape, occurred in twenty-one seconds.

Once the license number noted by the victim was given to police, it was determined that the truck seen at the car wash was registered to the defendant. Based upon this, the victim was asked to participate in a photographic lineup, and she identified the defendant as her attacker. Afterwards, police proceeded

to the defendant's residence and took him into custody.

A Sullivan County grand jury subsequently returned an indictment charging the defendant with aggravated kidnaping. At trial, the defendant's statement to police was admitted into evidence. In the statement, the defendant did not deny his presence at the scene or that he had approached the victim and asked her for a dollar. He acknowledged that he had touched the victim on her shoulder but denied that he had grabbed her. He stated that she became hysterical and that he panicked and fled the scene.

*State v. Johnny Lynn Heitz*, No. E2007-02236-CCA-R3-CD, slip op at 1-2 (Tenn. Crim. App. Nov. 26, 2008), *perm. app. denied* (Tenn. Apr. 27, 2009).

At the post-conviction hearing, the Petitioner testified that counsel failed to formulate a defense, rendering his representation ineffective. He said that after he was arrested, his parents hired counsel and that the first time he saw counsel was two months later. He said that at the first meeting, counsel told him he would most likely be convicted of misdemeanor assault because no marks were on the victim. He said that other than the initial meeting and five to ten minutes after court appearances, he only met with counsel three times. He said that in the meetings, counsel did not provide him with sufficient answers to his questions and told him he would likely be charged with misdemeanor assault.

The Petitioner testified that one of their discussions concerned having Linda Heitz, the Petitioner's ex-wife, testify. He said that Ms. Heitz was with him when the crime occurred and that counsel interviewed her. He stated that he and counsel discussed her testifying and that counsel said Ms. Heitz may be an ineffective witness because she had been stopped by the police with drug paraphernalia and a pistol under her seat. The Petitioner said that counsel made the final decision as to whether Ms. Heitz would testify and that he followed counsel's lead.

The Petitioner testified that Ms. Heitz was the only other person who could have told his side of the story. He said counsel did not explain to him that if neither of them testified, the jury would only hear the victim's side of the story. He stated that he and counsel discussed whether he should testify but that counsel recommended against it because the prosecution would impeach him with his prior convictions. He believed all his prior offenses could be used against him, which influenced his decision not to testify.

The Petitioner testified that the trial resulted in a thirty-year sentence at 100% and that he did not offer any proof or a defense. He said counsel did not advise him against providing private information when he completed the presentence form.

On cross-examination, the Petitioner agreed that counsel's theory during opening and closing arguments was that the victim could not be telling the truth because the events she alleged could not have occurred in twenty-one seconds. Because he did not want to involve his ex-wife, he told the police that a woman named Julie was with him at the car wash. He had not considered that calling Ms. Heitz to testify would have shown that he lied when he gave his statement. He said that Ms. Heitz saw what happened and would have been a good witness for him but that he did not mention her in his statement to the police.

The Petitioner testified that counsel told him not to testify and that all he could remember was counsel thought the Petitioner's prior convictions could be used against him if he testified. He agreed that he had been convicted of robbery and aggravated assault in September 1982, robbery in May 1988, kidnapping in 1988, and theft over $1,000 and aggravated burglary in 1998. He said that even after listening to the arguments, he did not understand which convictions could be used against him. He said he should not have provided all the information for the presentence report, including a 1974 burglary charge that was used against him at sentencing. He remembered a hearing in which the judge told him it was his decision not to testify.

On redirect examination, the Petitioner testified that counsel read the statement Ms. Heitz took to him, which explained what happened at the car wash. He said that he revealed cocaine use on the presentence report but that the information may have come from a previous presentence report. He said counsel never advised him that past drug use could be used against him at sentencing. On recross examination, he agreed that he had previously participated in the preparation of a presentence report and that he probably admitted drug use in those reports.

Counsel testified that he met with the Petitioner when the Petitioner came to court and more than three other times before the trial. He recalled three meetings during the weeks before the trial and said he went to the jail for at least some of the meetings. He said the defense was that in order to convict the Petitioner, the jury needed to believe everything the victim said and that it all happened in the twenty-one-second window on the video. Counsel stated that the Petitioner did not decide if he would testify until after the trial began when the court determined which of his prior convictions could be used.

Counsel testified that he talked to Ms. Heitz, who said she could testify that she saw the Petitioner walk out of the bay where they were washing their vehicle and that she did not see anything else until the Petitioner came running back into the bay and told her they were leaving. He said that she gave him a written statement to that effect but that he chose not to call her because the Petitioner did not want her to testify at first but later changed his mind. He said that the only benefit of her testifying would have been to establish the time frame,

which was already documented with the security video, and that he and the Petitioner agreed that her testimony would not be helpful. He said that Ms. Heitz told him the Petitioner acted scared when he got into the truck and that the decision for her not to testify was made before the trial began.

Counsel testified that when the trial began, he knew the only possible witness was the Petitioner because Ms. Heitz was not going to testify. He explained to the Petitioner that if he did not testify, the victim's version of the events would be the only one presented to the jury. He said that because the Petitioner was uncertain about testifying, he discussed with him the convictions that could be used against him. He said that he probably advised the Petitioner he should not testify but that it was the Petitioner's decision.

Counsel testified that he believed the piece of paper with the Petitioner's license plate number was hearsay but that he did not object to its admission because the Petitioner's presence was not an issue. He said that the Petitioner had given a statement admitting he was at the car wash and that the video showed the Petitioner and the license plate.

Counsel testified that he wanted the video admitted as evidence because it established the time frame in which the events occurred. He said he would not have objected to the Petitioner's identification from a photograph lineup because the Petitioner's identity was not at issue. He said that if he had raised the issue concerning the Petitioner's identity, he would have lost the issue and that the jury would have become skeptical of his other arguments.

Counsel testified that he did not object to the prosecutors' comments in the State's closing argument. During closing, one of the prosecutors argued:

> And then he flees. That alone, to me, shows he had the intent to commit the crime. Who flees if they think they've done nothing wrong. Who flees? And he wasn't found, he didn't turn himself in. He didn't come back by to try to explain his side of the story. He had to have been found at 10:30 that night, and we're talking hours later, at least five hours later that he had to be found that night, because he knew what he had done.

Counsel said he probably should have objected to the prosecutor's comments during her closing argument when she told the jury that "to [her]," the Petitioner's fleeing showed he had the intent to commit the crime and that the Petitioner did not return to explain what happened. He said he should have at least raised the issue in his motion for a new trial. He said that the prosecutor made other comments concerning the State's proof being uncontradicted, which he considered more prejudicial, and that he addressed these comments in his motion for a new trial. He said he did not pursue the issue on appeal because he was unable to find supporting

case law. He could not recall the cases he read during his research.

Counsel testified that he normally advised clients not to complete the last page of the presentence report questionnaire requesting a narrative but that he probably did not advise the Petitioner against providing personal information that could be used against him. He did not know whether the information in the narrative was used during sentencing, but the trial court stated it was. Counsel said he searched for the statement Ms. Heitz gave him but was unable to find it.

On cross-examination, Counsel testified that he believed his best strategy was to attack the victim's recollection of events, arguing that the events could not have happened in twenty-one seconds. He felt it was "farfetched" to believe that enough occurred during the short time to convict the Petitioner of aggravated kidnapping. He said it would have been "foolish" to contest identity because the Petitioner had given a statement admitting that he was at the car wash and that he touched the victim's shoulder. He believed that the Petitioner would be convicted of assault and that the best outcome would be a misdemeanor assault conviction. He was aware the Petitioner provided an incorrect name for Ms. Heitz in his statement to the police, but he decided not to ask Ms. Heitz to testify because she had not seen the Petitioner's interaction with the victim. He said the victim was a good witness at the trial. He said that he was unable to speak with the victim before the trial but that the prosecutor told him she would be a good witness. He said he made a mistake in asking the victim to demonstrate what happened during the attack but explained that he wanted her to demonstrate the number of events she claimed happened in the short amount of time.

Counsel testified that he waited until he knew which of the Petitioner's convictions could be used against him and discussed them with the Petitioner when talking with him about testifying. He said he could not recall the specific convictions that were allowed but agreed they could have been robbery, aggravated burglary, theft over $1,000, and armed robbery. He said he wanted the video admitted as evidence because it established the time frame. He said that he objected freely during opening or closing arguments at bench trials but that he was hesitant at a jury trial because of the effect it could have on the jury.

On redirect examination, counsel testified that he trusted the prosecutor, who was an experienced trial lawyer, when he told him the victim would be a good witness. He agreed his defense was to "poke holes" in the victim's story even though she was believable. He said that it was not necessarily a good defense but that "it was what [they] had."

The trial court credited counsel's testimony and found that "the defense that the incident could not have happened as described by the alleged victim and in the time frame shown on the video was a valid defense." The court noted that the Petitioner had

acknowledged counsel's comments about the twenty-one-second time frame and the victim's not telling the truth. The court found that counsel's failure to object during the State's closing argument was appropriate trial strategy and that even if the failure was deficient performance, the statements did not have an effect on the verdict. The court denied the post-conviction petition. This appeal followed.

The Petitioner contends that the trial court erred in denying his petition for post-conviction relief. He argues that counsel was ineffective because he failed to object to or appeal the prosecutor's inappropriate comments during closing argument, which included comments on the Petitioner's decision not to testify and statements of the prosecutor's personal opinion. The State counters that the court properly found the Petitioner received the effective assistance of counsel. We agree with the State.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, there is "a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the *Strickland* test. *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." *Id.*

The Petitioner contends that the prosecutor's comments in the first closing argument about the Petitioner's fleeing being evidence of guilt violated his right to silence and were improper statements of the prosecutor's opinion. The State argues that the prosecutor's argument concerned the Petitioner's pre-arrest silence, did not address the Petitioner's decision not to testify, and only repeated facts already in evidence concerning the Petitioner's actions after the incident. The State also argues that the prosecutor's use of the words "to me" in her closing argument was isolated and did not affect the verdict.

Deficient performance requires proof that "'counsel's representation fell below an objective standard of reasonableness.'" *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009) (quoting *Strickland*, 466 U.S. at 687-88). An objective standard of reasonableness requires courts to measure counsel's performance not by the clear view of hindsight but by the circumstances of counsel's conduct and to evaluate it from counsel's perspective at the time. *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011) (citing *Strickland*, 466 U.S. at 689). If counsel's decision was merely a strategic or tactical decision, the court should not "second guess" that decision. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982) (citing *United States v. DeCoster*, 487 F.2d 1197, 1201 (D.C. Cir. 1973)). The fact that a particular strategy or tactic failed or hurt the defense is not, by itself, sufficient to establish this prong, but the strategic choices must be "informed ones based upon adequate preparation." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). "In reviewing the deficiency of counsel, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.2d 453, 462 (Tenn. 1999).

Regarding the Petitioner's claim that the State violated his right to silence, his brief stated that a case involving prearrest silence was before the United States Supreme Court and could be relevant to this case. The case has been decided adversely to the Petitioner's argument. In *Salinas v. Texas*, — U.S. —, 133 S. Ct. 2174 (2013), the Court concluded that a prosecutor's comments at trial about a defendant's silence in response to a precustodial police interview did not violate the defendant's Fifth Amendment privilege against self-incrimination. *Id.* at 2184. We conclude that the silence to which the prosecutor referred was before the Petitioner's arrest and did not have the protections of the Fifth Amendment.

Regarding the prosecutor's statement, "That to me shows he had the intent to commit the crime," a prosecutor should not assert his or her personal opinion as to the truth or falsity of any testimony or evidence or as to the guilt or innocense of the accused. *See State v. Henley*, 774 S.W.2d 908, 911 (Tenn. 1989). In determining whether improper prosecutorial

conduct could have affected the verdict to the prejudice of the defendant, the conduct must be viewed in context and in light of the facts and circumstances of the case, including whether the remarks were lengthy or repeated or whether the statement was single or isolated. *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976). A court should also consider whether curative measures were taken by the trial court and prosecution, the intent of the prosecutor in making the statement, the cumulative effect of the improper conduct and any other errors in the record, and the relative strength or weakness of the case. *Id.*

Although this statement was an improper expression of the prosecutor's personal opinion, the statement was short and isolated. The evidence against the Petitioner was strong. The victim's testimony was corroborated by a video and other witnesses, and the Defendant's statements after the crime admitted his presence at the scene. We conclude that the Petitioner has not established that a reasonable probability exists that, but for counsel's failure to object to this statement, the result of the proceeding would have been different.

The Petitioner asserts that the prosecutor's statement in the second closing argument about there being no testimony to contradict the victim's testimony was an unconstitutional comment on his decision not to testify. The State counters that the prosecutor made a proper statement about the State's evidence being uncontradicted and that the statement did not prejudice the Petitioner. In closing, the prosecutor argued, "There's nothing to contradict [the victim's testimony], not the video, not anyone . . . not any exhibit, not anyone's testimony and not common sense[.]"

A defendant may not be penalized at trial for the exercise of his constitutional right to remain silent after arrest. *Doyle v. Ohio*, 426 U.S. 610, 618 (1976); *Braden v. State*, 534 S.W.2d 657, 661 (Tenn. 1976). Also, a prosecutor may not comment on a defendant's decision not to testify. *State v. Reid*, 91 S.W.3d 247, 297 (Tenn. 2002). However, a prosecutor's statement that proof is unrefuted or uncontradicted is not an improper comment upon a defendant's failure to testify. *State v. Thomas*, 818 S.W.2d 350, 364 (Tenn. Crim. App. 1991); *see State v. Rice*, 638 S.W.2d 424, 427 (Tenn. Crim. App. 1982) ("Generally, mere argument by the state that its proof is unrefuted or uncontradicted is not an improper comment upon a defendant's failure to testify."); *Taylor v. State*, 582 S.W.2d 98, 100 (Tenn. Crim. App. 1979) (concluding that the prosecutor's statement during closing argument that only three people knew what happened and that the victim had told the jury what happened was analogous to an argument by the prosecution that the State's proof was unrefuted or uncontradicted, which did not constitute an improper comment on the defendant's failure to testify); *Holder v. State*, 490 S.W.2d 170, 173 (Tenn. Crim. App. 1972) (concluding that the State's closing argument, which included a statement about there being no denial of the State's evidence, was comparable to an argument that the evidence was uncontradicted and was not a prohibited comment on the defendant's not testifying).

The prosecutor made no direct statement or reference to the Petitioner's failure to testify, and he did not argue that the failure to testify created an inference of guilt. The statement concerned the State's proof being unrefuted and uncontradicted, which was not an improper comment on the Petitioner's failure to testify. The Petitioner is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE